## THE LUTCHER BROWN.

### THE SOUTHSEAS.

#### No. 5767.

Circuit Court of Appeals, Fifth Circuit.

May 28, 1930.

Brantly Harris and David Watkins, both of Galveston, Tex. (Harris & Watkins, of Galveston, Tex., on the brief), for appellant.

J. Newton Rayzor, of Houston, Tex. (Royston & Rayzor, of Houston, Tex., on the brief), for appellee the Southseas.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La. (Daniel H. Grace, of New Orleans, La., Weaver Moore, of Houston, Tex., and John D., M. A. & Edwin H. Grace, of New Orleans, La., on the brief), for appellee Petroleum Naviga-tion Company.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from an interlocutory decree determining the rights and liabilities of the parties in a case of collision. 28 USCA § 227. The record supports the following conclusions as to the material facts:

The steamship Southseas was proceeding down the Houston ship channel on the afternoon of December 30, 1927, from Houston to the sea, and at about 3:45 p. m., at a point near Red Fish Reef, in the said channel, collided with the barge Petroleum No. 5 in tow of the tug Lutcher Brown. The tow had left from Texas City at about 1:45 the same afternoon. The tug was in complete charge of the voyage. The day was very foggy, in fact was foggy when the tow left Texas City. At the time of the collision approaching vessels could not be seen for a distance of over 100 feet. Both vessels were being navigated by compass. The barge had no motive power and no steering apparatus. She was equipped with about 50 fathoms of chain, to be dropped overboard, if occasion required, to steady her in navigating narrow channels. This was referred to by the witnesses as a "skag." The barge had a deckhouse on her after end and to facilitate the towing, and, to lessen the effect of wind resistance, she was towed stern first. At the time of the collision the skag was not being used. The Southseas was running at one-half speed, and, with the current running in the channel, was making about 8 miles an hour. The evidence is conflicting and indefinite, but the tow was making possibly three and a half to four miles an hour. The Southseas was blowing fog signals at regular intervals. Apparently so was the tug. The tug was navigated by her captain at the wheel, and a lookout was stationed close by. Both of these witnesses testified they did not hear the fog signals of the Southseas, and first saw her masts above the fog when she was at a distance of about 100 feet. However, a deck hand on the barge heard the fog signals of the Southseas before the collision. The captain of the barge did not hear them, but he was in the engine room of the barge attending to some work there. When those on the vessels saw each other, they gave the usual signals to pass to the right, and both attempted to execute the manœuvre. The tug and the ship cleared. The barge was being towed astern on hawsers.

There is considerable conflict in the testimony as to the length of these hawsers and how they were made fast. The captain of the tug testified she was being towed by two lines running from bits on each side of the tug to bits on each side of the barge. The witnesses on the barge, however, testified that she was being towed on a bridle. It is possible that the tow line was too long, considering existing conditions. But all of this is comparatively immaterial. At any rate, after passing the Southseas, the captain of the tug put his helm hard over to change his direction sharply to the left with the intention of swinging the barge sharply to the right to clear the ship, a manœuvre described as "popping the whip." This was unsuccessful, and the collision occurred, damaging both vessels.

Practically all of the witnesses appeared in open court before the District Judge. The District Court found that both were in the middle of the channel; that the Southseas was at fault in proceeding at an excessive rate of speed considering the fog and the narrowness of the channel; that the tug was doing the same, with the intention of finding a hole permitting a safe passage if another vessel should be encountered. The decree exonerates the barge and divides the damages between the ship and the tug.

The Southseas has not appealed, and does not seriously dispute the conclusions reached by the District Court. In addition to the facts found by the District Court as indicating negligence of the tug, we think it was negligence on her part to attempt to navigate the narrow channel at all in the fog. She was in a safe place at Texas City, and started out in the fog before it had sufficiently lifted to indicate that it would clear up. No doubt it became denser as she proceeded. Both vessels of the tow were of light draft. The draft of the tug is not shown, but the barge was drawing only about 6 inches. It was negligence not to use the skag with which the barge was equipped and to not keep well over to the side of the channel where the tow could navigate and where deeper draft vessels coming out loaded from Houston could not. The captain of the tug should have anticipated meeting such vessels, and it was his duty to keep a sharp lookout for them. Since there is no doubt that the Southseas was blowing fog signals, as those on the tug did not hear them, the presumption may be indulged that they were not attending strictly to their duties.

The record presents no reversible error. Affirmed.